## 687.  JENKINS v. THE STATE.

RUSSELL, J.  1. The evidence fully authorized the verdict, which was approved by the trial judge; and no reason appears why a new trial should be granted.

2. Under the evidence in the record, the jury were authorized to infer that the goods which had been recently stolen and which were found in the possession of the defendant's wife had been delivered to her by the defendant, and that the possession of the wife was, constructively, the possession of the husband, regardless of the marital relation existing

between them. The evidence for the State, though entirely circumstantial, excluded every other reasonable hypothesis than that of the defendant's guilt. *Judgment affirmed.*

Indictment for burglary, from Terrell superior court—Judge Worrill. July 6, 1907.

Submitted October 7,—Decided October 22, 1907.

Ed Jenkins was convicted of burglary. He excepted to the refusal of a new trial. The motion for a new trial was on the general grounds, that the verdict was contrary to law, evidence, etc. From the evidence it appeared, that the dwelling-house of the prosecutor was broken and entered and two pairs of his pants were stolen from it between the time he left it in the morning and the time of his return in the afternoon of the same day; and that the pants were found, the next morning, at the house of Polly Jenkins, the wife of the accused. The prosecutor testified, that when he left his house on the day of the burglary and before the crime was committed, Ed Jenkins was at work in a field, about 150 yards from the house, and knew that he was going to town. A woman testified, that she was working in the field that day, while Ed Jenkins was there, and that he left the field, and she did not know where he was or what became of him. In the night of the same day, he was seen at the house of his wife, who had shortly before moved away from the place at which he was working, and was not living with him. The prosecutor testified, that Ed Jenkins came to his house the next morning, "about light," from the house of Ed's wife, where, Ed said, he went to carry her some clothes. The witness said to Ed. "Somebody has broke in my house and stole my clothes;" and Ed said, "They have?" That was all he said. The prosecutor saw a shoe-track, that morning, at the window where the house had been entered. He testified: "I saw shoe signs there, about a number-nine shoe. It was a big shoe-track. The track was just like Ed Jenkins' track. I know it was the same shoe he had on that made the track where the house was broken open, because it didn't have any heel on it. . . The tracks were right at the window where he went in; there was a little step there at the window and he put his foot on the step, and the ground was kinder soft there and he made a plain track. I didn't see any track there but his." He left Ed Jenkins lying on the porch, asleep, that morning, and went to the house of Jenkins'

wife, a distance of about six miles, and, after finding the pants there, was returning, to get a warrant, and when he was about a mile and a half from her house, he met Jenkins running towards the house. The prosecutor returned with an officer, and got the pants. He testified: "Ed Jenkins was at home at the time, I reckon. . . Ed Jenkins said he didn't know nothing about it. . . He had seen the pants in my house. About a week before my house was broken open, Ed Jenkins tried to buy one pair of those pants from Mr. Joe McLendon, but he didn't buy them and I bought them." It does not appear that any explanation as to the pants found at the house of the defendant's wife was made by either of them. He made no statement to the jury and offered no testimony but that of a witness who testified: "I saw Ed Jenkins pull that shoe off his foot a few minutes ago. Defendant had the shoe on his foot when he came into the court-room, and it looks like it is about a number eleven."

*H. A. Wilkinson,* for plaintiff in error.

*J. A. Laing, solicitor-general, R. R. Arnold, J. B. Ridley,* contra.